**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **Crim. No.  07- 50(RMU)** |
| ) | |
| **v.** ) | |
| ) | |
| **MELVINA MURPHY** ) | |

**DEFENDANT'S MOTION FOR LEAVE TO LATE FILE**
**THE SENTENCING MEMORANDUM**

Defendant, Melvina Murphy, through undersigned counsel, respectfully moves the Court

to grant the Motion for Leave to Late File the Sentencing Memorandum.

As grounds for this Motion undersigned states:

1.      Melvina Murphy is before the Court pending the sentencing hearing which is

scheduled for March 11, 2008. On November11, 2007, Ms. Murphy entered a guilty plea to count

one of the indictment which charged her with Unlawful Distribution of 5 Grams or more of

Cocaine Base and Aiding and Abetting in violation of 21 U.S.C. § 1841(a)(1) and

841(b)(1)(B)(iii).

2.      Pursuant to the Court's Sentencing Scheduling Order, undersigned counsel was to

submit Ms. Murphy's sentencing memorandum no later than 8 business days after the Probation

Office's final disclosure of the Presentence Investigation Report (PSR).  Probation Officer

Michale Penders' revised PSR is dated January 18, 2008.  Undersigned counsel received the

report on Monday, January 21, 2008.  Accordingly, undersigned counsel's deadline for filing Ms.

Murphy's sentencing memorandum was January 30, 2008.

3.      Undersigned counsel was unable to meet the Court's deadline on account of  work

relating to three cases that had pending plea deadlines.  Each case required consulting with

clients in order to review the plea agreements and to explain the application of the federal

sentencing guidelines.  As a result, undersigned counsel was unable to meet the Court's deadline.

4.      Undersigned counsel apologizes to the Court and Government for any

inconvenience caused by the late filing Ms. Murphy's Sentencing Memorandum.

WHEREFORE, undersigned counsel respectfully moves the Court to grant his Motion for

Leave to Late file Ms. Murphy's Sentencing Memorandum.

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____

Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | **Crim. No.  07- 50(RMU)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MELVINA MURPHY** | ) | |
| | ) | |
| | ) | |

**ORDER**

That upon consideration of defendant's Melvina Murphy's Motion for Leave to Late File

her Sentencing Memorandum; it is hereby

**ORDERED** that the Motion For Leave to Late File the Sentencing Memorandum is

**GRANTED**; and it is

**SO ORDERED**

_____
RICARDO M. URBINA
UNITED STATES DISTRICT JUDGE

_____
DATE

Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004

Louis Ramos, Esq.
Assistant United States Attorney
United States Attorney's Office
555 4th Street.
Washington, D.C. 20530

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| ) | |
| UNITED STATES OF AMERICA ) | Crim. No.  07- 50(RMU) |
| ) | |
| v. ) | |
| ) | |
| MELVINA MURPHY ) | |
| ) | |
| _____ ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Melvina Murphy, through undersigned counsel, respectfully submits her

Memorandum in Aid of Sentencing.

**Procedural History**

Ms. Murphy is before the Court pending sentencing after she entered a guilty plea on

November 15, 2007.  Ms. Murphy pled guilty to count one of the indictment which charged her

with Unlawful Distribution of 5 grams or more of Cocaine Base and Aiding and Abetting in

violation of 21 U.S.C. § 1841(a)(1) and 841(b)(1)(B)(iii).  Ms. Murphy  committed the charged

offense on August 29, 2006.  Pursuant to the conviction Ms. Murphy faces a mandatory

minimum prison sentence of five years and a maximum term of forty years.  Upon her release

from incarceration she will be on Supervised Release for a minimum of four years.  The statute

authorizes a maximum fine of up to $2,000.000.00 dollars and a special assessment of $100.00

dollars.  Probation Officer Michael Penders has calculated a sentencing range of 57 to 71 months

of incarceration pursuant to the advisory United States Sentencing Guidelines. The range results

from a Base Offense Level 25 and a Criminal History Category I.  Ms. Murphy is eligible for a

sentence below the mandatory minimum pursuant to the statutory and guideline "safety valve"

provision.  <u>See</u> to18 U.S.C. § 3553(f) and the U.S. S. G.§ 5C1.2.(a).

## ARGUMENT IN SUPPORT FOR A PRISON SENTENCE OF TWELVE MONTHS AND A DAY AND FIVE YEARS OF SUPERVISED RELEASE

Ms. Murphy is before the Court facing her first criminal conviction.  Sadly, she will be sentenced and labeled a convicted felon at the age of 49.  Her prior criminal record consists of a single arrest that took place in 1991 when she was 33 years old.  Ms. Murphy has been through a frightening experience that began when she reported to the police after learning that the authorities were looking for her.

In her brief interaction with the criminal justice system Ms. Murphy has been through a previously unimaginable experience.   At her initial appearance on August 30, 2007 Magistrate Judge Kay granted the government's request for temporary detention.  Ms. Murphy's brief confinement at the District of Columbia Jail was a sobering experience. Wearing an orange jumper and housed with some of the city's most violent individuals was something that she had never contemplated.  Having never set a foot in a prison, Mr. Murphy found herself bewildered and scared.

Her fear was compounded and accompanied by the humiliation of being processed through the criminal justice system. As her sentencing date approaches her trepidation has increased.  She knows that she could be sentenced to a significant prison term that could extend well into her fifties.  So instead of enjoying her middle years, Ms. Murphy is bracing herself and coming to terms with impact of her poor judgement and addiction to crack cocaine. Viewed under any circumstance this is a very disconcerting and sad prospect for someone who stands to be convicted for the first time.

While Ms. Murphy must be held accountable for her illegal conduct, there are aspects about her character, the criminal conduct, and her resolve that make it extremely unlikely that she will re-engage in future criminal conduct.  Recidivism is unlikely for a number of reasons.  First, Ms. Murphy has generally led a crime free and family oriented life.  An important gauge of her capacity to conduct herself responsibly is her compliance with the Court's orders during the pendency of the case.

Since she was transferred to the Fairview Community Correction Center on September 10, 2007, Ms. Murphy has not incurred a single infraction. Her turn around from being addicted to crack cocaine to sobriety and gainful employment is no less than a personal renaissance.  Her recovery and transformation have been the result of a sustained and honest commitment in making fundamental changes in her life.  To her credit she has completely embraced the opportunity that the Court provided in placing her in a halfway house with employment privileges.

I.    **PURSUANT TO 18 U.S.C. § 3553(a), 18 U.S.C. § 3582, 18 U.S.C. § 3661 AND 28 U.S.C. § 991(b)(1)(B)  MS. MURPHY REQUESTS A PRISON SENTENCE OF TWELVE MONTHS AND A DAY AND FIVE YEARS OF SUPERVISION**

In United States v. Booker, the Supreme Court held that the mandatory sentencing guidelines were unconstitutional as applied. 125 S. Ct. 738 (2005)  The Court further held that judges are required to "take account of the Guidelines together with other sentencing factors," and to "consider" the guidelines along with all the other required factors (emphasis added).  The Court is not bound by the guideline range and there is no requirement that a sentence be within the guideline range.  The guideline range is just one factor to be considered along with the mandatory statutory factors delineated in 18 U.S.C. § 3553(a).

Those factors  include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with the needed educational or vocational training, and pertinent policy statements issued by the sentencing commission, and the need to avoid unwarranted sentencing disparities among similarly situated defendants. U.S. v. Clifton Price 409 F.3d 436, 442 (D.C. Cir. 2005) Moreover, Sentencing Courts have a continuing duty to "[w]eigh the purposes of sentencing listed in the Sentencing Reform Act." U.S. v. Jabber 362 F.Supp.2d 365, 369 (D. Mass. 2005).

The primary purpose of the sentencing statute, 18 U.S.C. 3553(a), is for the sentencing court to impose a sufficient sentence, but not one that is greater than necessary.  18 U.S.C. § 3553(a) allows the Court to take into account the particularized factors of Ms. Murphy's life and not just the fact of her criminal conduct. This approach is consistent with the objectives of 28 U.S.C.  § 991, the enabling statute of the Sentencing Commission.  Both the enabling statute and the sentencing statue contemplate a flexible and particularized approach to sentencing determinations.

28 U.S.C. § 991(b)(1)(B) provides Sentencing Courts with discretion to "maint[ain] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." Application of 18 U.S.C. § 3553(a) along with the flexibility called by 28 U.S.C. § 991(b)(1)(B) can justify the imposition of a prison sentence of twelve months and a day and five years of supervised release.

**The Nature and Circumstances of the Offense**

18 U.S.C. § 3553(a)(1) directs the Court to look at the nature and circumstance of the

offense and Ms. Murphy's history.   Ms. Murphy's criminal conduct took place during a two

month period in 2006.  The details of her criminal conduct are accurately summarized in the PSR

see ¶ 6-9.  Every time she sold crack cocaine,  Ms. Murphy served the role of a street seller doing

the bidding for an unknown and insulated supplier.  Ms. Murphy's minor role in the offense was

borne out by the manner in which she relayed the price that was set by her supplier.  This is

documented in a September 13, 2006 Supplemental Criminal Incident Record report authored by

the investigating officer.  In the report the officer quotes Ms. Murphy as saying that the supplier

"wants $700.00 for that."  Two weeks later on September 27, 2006 in reference to another sale by

Ms. Murphy, she is quoted as saying that her supplier "wants $1,000.00".  Throughout the period

that she was under surveillance, Ms. Murphy was always on the streets, standing on street

corners, going out to meet and negotiate with the buyers.  Meanwhile her mysterious and elusive

supplier stayed in the background protected by the risks that Ms. Murphy took on the streets.

Although, Ms. Murphy appeared to be a constant presence on the streets delivering and

serving buyers, she came away with very little to show for her efforts.  Certainly she did not get

to keep the hundreds of dollars that she was receiving when she sold to the undercover officers

and other buyers.  Her limited role is supported by the fact that while her supplier was generating

sales in the thousands of dollars Ms. Murphy had nothing of value when she was arrested. Ms.

Murphy did not own or possess a car, or any jewelry or home furnishings worth mentioning.

Not surprisingly, it was her vulnerability to crack cocaine that the drug supplier accurately

gauged and manipulated.  Ms. Murphy's only requirement was to receive enough crack cocaine

to sustain her addiction.  In Ms. Murphy, her supplier found the perfect street corner dealer.  An

additional benefit was that Ms. Murphy did not present a physical or financial threat to her

supplier.  Since feeding the addiction was her priority, Ms. Murphy neither demanded nor

negotiated for a bigger percentage of the profits.  Equally important for the supplier was that

while Ms. Murphy was on the street jeopardizing her life, he was safely ensconced beyond the

surveillance that snared Ms. Murphy.  Unwittingly, with every subsequent sale Ms. Murphy

increased her prison exposure while protecting and enriching her supplier.  Irrespective that she

pled to a single count, all the sales charged in the indictment are counted as relevant conduct.  In

short, Ms. Murphy brought and will alone shoulder an incalculable harm by selling another

person's drugs.

### History and Characteristics of Ms. Murphy

Ms. Murphy's struggle with narcotic addiction has had a dominant and devastating effect

on her life.   Notwithstanding the toll of the addiction, Ms. Murphy managed to stay afloat and

beyond the reach of the law enforcement.  Throughout her prolonged addiction, Ms. Murphy

never became homeless nor did she ever require urgent medical intervention.  Regrettably, it was

her ability to function that clouded her reality and blinded her to havoc that crack cocaine had

wrought on her life. Under a false sense of normality Ms. Murphy lost her young adult life in a

haze of drugs.  Mercifully, the destructive life that she cultivated for nearly twenty-five years

came to a crashing end with her arrest on August 29, 2007.

When she surrendered to the authorities, Ms. Murphy never expected to be prosecuted in

Federal District Court.  She also never gave a thought to the idea of spending a significant

amount of time behind bars.  However, she soon realized the gravity of her situation when she

was ordered detained.  For a 49-year-old who had never set a foot in a prison, Mr. Murphy was

bewildered and scared by the dramatic turn in her life.  Needless to say, detention in the DC Jail

made an immediate impression on Ms. Murphy.  For the first time in her life she took stock of

her situation and realized that her crack addiction had completely devastated her life. To her

credit and as proof of her resolve, Ms. Murphy made a commitment to turn away from drugs, to

seek honest employment and to become a law abiding person.

Ms. Murphy started turning the page in her life when Magistrate Judge Kay placed her in

a halfway house with employment privileges.  Once the halfway house approved her for

employment passes, Ms. Murphy began working with Simply Immaculate Cleaning Services.

Her employment consisted of traveling to Annapolis, Maryland to clean houses with the owner of

the company.  Ms. Murphy worked cleaning houses for approximately two months but had to

discontinue her employment because the long work day conflicted with her curfew.

Recently, Mr. Murphy was hired to work as a receptionist with Purple Heart, a charitable

organization that accepts and distributes donations. As a receptionist, Ms. Murphy frequently

speaks with people who want to make donations.  Afterwards she coordinates with Purple Heart

staff who pick up the donations.  Ms. Murphy thoroughly appreciates her job because she gets to

interact with office staff, moving staff, and friendly donors.  Ms. Murphy has completely

embraced the opportunity to be part of a team that works lawfully and productively with a

common purpose.  By working with Purple Heart she is also learning the value of selflessness

and of prioritizing the interests of others.

At age 49 Ms. Murphy has found a purpose in life that had been previously missing.

Earning honest money, working with professional and law abiding people has provided Ms.

Murphy with a respect and appreciation for life that she never had.  For the first time in her life,

Ms. Murphy feels pride in her humble but productive accomplishments.  Her employment

success has been contingent on her sustained sobriety, something which was unimaginable just a year ago. At this point in her life, the days of hustling to feed her addiction and of enriching and protecting a drug dealer is a thing of the past. In the context of a twenty-four year drug addicted haze, Ms. Murphy's turnaround is no less than a personal renaissance. At the sentencing hearing, the Court will see a Melvina Murphy that is unrecognizable from the street corner hustler who was selling a poison in the community.

**The Sentence should reflect the Seriousness of the Offense**

Ms. Murphy recognizes that the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. While the sentence must provide deterrence and protect the public, it must also provide Ms. Murphy with educational and vocational training and medical care. In balancing all of the purposes of sentencing, the Court must also impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2)[§ 3553]." See 18 U.S.C. § 3553(a).

Ms. Murphy has acknowledged the seriousness of her criminal conduct and has readily taken responsibility for her actions. When the police confronted her with the drug sales she made in August, September and October 2006, Ms. Murphy immediately admitted her culpability. In the first meeting with undersigned counsel, Ms. Murphy expressed her desire to resolve the case by admitting her guilt and accepting the consequences. In light of her resolve to rescue her life and her efforts to make amends for her wrongdoing, a guideline sentence of incarceration would be "greater than necessary."

Long term incarceration will make it very difficult for Ms. Murphy to obtain future

employment.  Ms. Murphy's recent jobs have become solid foundations that cannot be

underestimated in her journey toward permanent sobriety and financial independence.  A short

prison sentence allowing Ms. Murphy to return to the community under strict supervision, would

be more than adequate to meet the sentencing purposes set forth in 18 U.S.C. § 3553(2)(a).  A

year of incarceration in a federal facility will reemphasize the gravity of her crimes.  In the

federal facility Ms. Murphy will have to earn the potential good time credits.  Separately, the

felony conviction will have employment and voting consequences for the rest of his life.  As

such a twelve month sentence and the imposition of five years of supervised release will not be a

mere slap on the wrist.

      Supervised Release will subject Ms. Murphy to a strict supervision regimen which will

include reporting to a probation officer, submitting monthly financial reports, and mandatory

drug testing.  Furthermore, she will be  required to report any change in her residence, or

employment outside of the metropolitan area.  All of these factors will weigh heavy in her

everyday life.  It is safe to assume that recidivism for Ms. Murphy is unlikely and the

requirements of Supervised Release should adequately protect the public.  Seen in this light, long

term incarceration would result in a sentence that is "greater than necessary."

      Finally, the seriousness of the offense has to take into account and result in a sentence

that "promote[s] respect for the Law and provide[s] just punishment."  A sentence of twelve

months and a day and the imposition of supervised release can be "just punishment" when the

Court considers and takes into account 18 U.S.C.§3582.  In pertinent part 18 U.S.C. §  3582 (a)

states:

      "The Court, in determining whether to impose a term of imprisonment, and if a term of

imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) <u>to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation</u>" (emphasis added)

**The sentence should afford adequate deterrence to criminal conduct**

A sentence of supervised release following a year of custody will more than adequately protect the public and achieve adequate deterrence for the following reasons. First, Ms. Murphy is a first time offender who throughout her life has never exhibited violent or antisocial behavior. The charged criminal conduct encompasses four discrete sales that took place during a two-month period in 2006. By the time Ms. Murphy reported to the police in August 2007 she had stopped her drug dealing for at least eight months. Ms. Murphy stopped her drug dealing without any knowledge that she was under investigation. Finally, although Ms. Murphy battled with a twenty-four year addiction to crack cocaine, she was never a habitual drug dealer.

**The sentence should provide the most effective rehabilitation treatment**

A short prison sentence followed by supervised release will most effectively support Ms. Murphy's rehabilitation progress. While Ms. Murphy's recent rehabilitation efforts are commendable, permanent recovery will require a long term commitment. In that effort she will need the assistance and guidance of professionals. A twenty four year old addiction is an illness that can be triggered by a host of stressful circumstances. The probation office is best equipped to direct and assess her overall progress while she is undergoing treatment. Long term incarceration, on the other hand, could have a negative effect and undermined the progress that Ms. Murphy has made to this point. Because of her sobriety, Ms. Murphy is mentally ready and eager to take advantage of any educational and vocational opportunity that will be available in

the community after her release from custody.

Undersigned Counsel's request on behalf of Mr. Murphy is admittedly extraordinary. The request is premised on Ms. Murphy's encouraging efforts in pulling herself out of a life of crime and a self induced narcotic illness. Thus far, Ms. Murphy has demonstrated a genuine commitment to live a law abiding life and to stay clear of the drug dealers who took advantage of her. By imposing a period of supervised release of five years, Ms. Murphy will always be reminded of the consequences of going back to her old ways. Supervised Release means the Court will continue to have jurisdiction and authority to sentence Ms. Murphy up to 60 months in prison for violating supervision. The threat of incarceration at the D.C. Jail or at a federal penitentiary will certainly have a preclusive effect since it's a real and tangible consequence that Ms. Murphy does not want to re-experience.

**CONCLUSION**

Ms. Murphy is a decent and well meaning woman who made a series of terrible decisions in selling crack cocaine in exchange for enough crack cocaine to satisfy her addiction. Prior to the instant offense Ms. Murphy had never been incarcerated in her life. Since she was arrested Ms. Murphy has been through a life altering and sobering experience. Ms. Murphy wants the opportunity to demonstrate that she can lead an exemplary life that is characterized by honesty, hard work and responsibility to her family and community. Mr. Murphy is ready to take on the challenge and prove to the Court and the government that she has learned her lesson. For these reasons undersigned counsel requests that the Court sentence Ms. Murphy to a prison sentence of twelve months and a day and five years of supervised release.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____

Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500